UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 Case No. 17-CR-113

TOMMIE COLE,

        Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Mario F. Gonzales, Assistant United States Attorney, and the defendant, Tommie Cole, individually and by attorney Jacob A. Manian, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in one count of a two-count indictment, which alleges violations of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846.

3.    The defendant has read and fully understands the charge contained in the indictment. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.    The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT TWO

THE GRAND JURY CHARGES:
1. Between approximately January 1, 2016, and June 20, 2017, in the State and Eastern District of Wisconsin, and elsewhere,

**FERNANDO REYES,
JUAN AVINA,
BRYAN BANKS,
DANTE WILLIAMS,
TOMMIE COLE, and
ALEJANDRO CASTENEDA**

knowingly and intentionally conspired with each other, and with persons known and unknown to the grand jury, to distribute controlled substances, and aided and abetted the conspiracy.

2. The offense involved 1 kilogram or more of a mixture and substance containing heroin, a Schedule I controlled substance, and 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, and Title 18, United States Code, Section 2.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt: This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: count two, life and $10,000,000. The count also carries a mandatory minimum of 10 years of imprisonment. Count two also carries a mandatory special assessment of $100; at least five years of supervised release; and a maximum term of life on supervised release. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney, including any possibility that the defendant may qualify as an Armed Career Criminal under 18 U.S.C. § 924(e) or a career offender under the sentencing guidelines.

## PROOF OF DRUG WEIGHT FOR STATUTORY MAXIMUM PENALTY

8. The parties understand and agree that for the penalties in 21 U.S.C. § 841(b)(1)(A) to apply, as provided in paragraph 6 above, the government must prove beyond a reasonable doubt that the offense to which the defendant is pleading guilty involved at least five kilograms or more of cocaine. The defendant agrees that the government possesses sufficient, admissible evidence to meet this burden.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of conspiracy to possess with intent to distribute a controlled substance as set forth in count teo, the government must prove each of the following propositions beyond a reasonable doubt:

First, that the alleged conspiracy existed; and

Second, that the defendant knowingly and willingly became a member of the conspiracy with the intent to further the conspiracy.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided

false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

16. The parties agree to recommend acknowledge and will recommend to the sentencing court that the relevant conduct attributable to the defendant is at least five kilograms but less than fifteen kilograms of a mixture and substance containing cocaine, a Schedule II controlled substance.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in count one is 30 under Sentencing Guidelines Manual § 2D1.1(c)(5).

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Career Offender or Armed Career Criminal

19. The parties acknowledge, understand, and agree that the defendant may qualify as a career offender under the sentencing guidelines. The parties further understand, acknowledge, and agree that the defendant may not move to withdraw the guilty plea solely as a result of a determination that under the guidelines, the defendant is determined to be a career offender.

## Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum

penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

### Fine

26. The parties agree to recommend acknowledge and understand that the government will recommend to the sentencing court that a nominal fine be imposed against the defendant.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Forfeiture

28. The defendant agrees that all properties listed in the indictment, and/or bill of particulars constitute the proceeds of the offense to which he is pleading guilty, or were used to

facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement. The parties agree that the forfeiture of the defendant's properties as described in the indictment, and/or bill of particulars will be determined by the court prior to or at the time of sentencing.

## DEFENDANT'S COOPERATION

29. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

> a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the

     judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

  b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

  c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

  d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

  e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

9

Case 2:17-cr-00113-PP   Filed 04/16/19   Page 9 of 17   Document 415

32. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## MISCELLANEOUS MATTERS

35. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Because defendant is pleading guilty to conspiracy to possess and distribute controlled substances, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant

understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States.

## GENERAL MATTERS

36. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

37. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

38. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

39. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

40. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

12
Case 2:17-cr-00113-PP   Filed 04/16/19   Page 12 of 17   Document 415

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 4/12/19

TOMMIE COLE
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: April 12, 2019

JACOB A. MANIAN
Attorney for Defendant

For the United States of America:

Date: 4/16/19

MATTHEW D. KRUEGER
United States Attorney

Date: Apr 15, 2

MARIO F. GONZALES
Assistant United States Attorney

13

## Attachment A

1.  Tommie Cole has been identified as a cocaine customer of Fernando REYES. Case agents have conducted surveillance of several drug transactions between Fernando REYES and Tommie Cole that occurred at various locations in Milwaukee, WI.

2.  On March 15, 2017, at 4:58 p.m., Tommie COLE, called Fernando REYES at (Target Telephone #9). COLE stated, "I need one." REYES asked, "You need one?" COLE stated, "Yeah." REYES stated, "Alright. Sounds good. So I'll meet you…I'm in Waukesha right now. I'm on my way there. I'll be there like in about an hour. Is that fine? You think an hour is fine?" COLE replied, "Yeah." REYES stated, "Sounds good. I'll call you when I'm there." Case agents believe COLE told REYES he wanted to purchase one kilogram of cocaine. REYES agreed and said he would call COLE when he arrived at COLE's residence. On March 15, 2017, at 6:15 p.m., REYES, using (Target Telephone #9), sent a text message to Tommie COLE that read, "6 m." Case agents believe REYES sent a message to COLE stating he would arrive in six minutes. At 6:26 p.m., REYES, using (Target Telephone #9), sent a text message to COLE that read, "I'm outside." At 6:29 p.m. COLE, called REYES at (Target Telephone #9) and asked, "You outside?" REYES replied, "Yeah." COLE asked, "Okay. You in the back?" REYES said, "Yes." COLE replied, "Alright." Case agents have previously conducted surveillance of transactions between COLE and REYES and know that REYES prefers to park on the parking slab behind COLE's residence to conduct transactions. Case agents believe REYES told COLE he was waiting outside behind his residence. COLE then went outside where REYES delivered one kilogram of cocaine to COLE.

3.  On April 7, 2017, at 4:54 p.m., Tommie COLE, called Fernando REYES at (Target Telephone #9). COLE asked, "You said you only got two of the black ones left?" REYES stated,

"That one is only one of the black one and one of the other ones." COLE stated, "Oh, never that other one." REYES stated, "This one is a bit different than the other one. This one is really good. I got two kinds right now." COLE stated, "You told me last time it was really good." REYES stated, "This one is good. Super good, bro." COLE stated, "You told me that last time." REYES asked, "You don't believe me?" COLE asked, "You only got two?" REYES replied, "Yeah, that's all I got. Two right now." COLE stated, "You could just bring me the two." REYES asked, "You want these two?" COLE replied, "Yeah." Case agents believe COLE asked REYES if he only had two kilograms of a "black kind" of cocaine left, possibly referring to kilograms wrapped in black tape. REYES said he had one of the "black" kind and one of the other kind. COLE said he did not want to buy the other kind. REYES said this kind of cocaine was different than the other one COLE did not like and that the current kind was good quality. COLE said REYES had promised COLE the last cocaine was good quality. COLE asked if REYES only had two kilograms left and REYES said that was all he had left. COLE told REYES to bring the two kilograms to COLE and REYES agreed. On April 7, 2017, at 5:33 p.m., REYES, using (Target Telephone #9), sent a text message to COLE that read, "10 minutes." At 5:34 p.m., COLE sent a text message back to REYES that read, "Ok." At 5:46 p.m., REYES, using (Target Telephone #9), called COLE at and stated, "I'm in the back." REYES agreed. At 5:51 p.m., REYES, using (Target Telephone #9), sent a text message to COLE that read, "Outside." Case agents believe this was a follow-up text message sent to COLE by REYES confirming that REYES was outside of COLE's residence. Case agents believe REYES delivered two kilograms of cocaine to REYES in the rear of COLE's residence. Court-authorized positional information for (Target Telephone #9) confirmed that REYES was in close proximity to COLE's residence, at the time of this call.

4.  On May 16, 2017, Tommie COLE,, sent a text message to REYES at (Target Telephone #16) that read, "Did u get me a better number." Case agents believe COLE asked REYES if had been able to get COLE a better price ("number") for cocaine COLE wanted to purchase. Since REYES had stopped using (Target Telephone #16), case agents do not know if REYES received the text message.

5.  On July 6, 2017, at 2:11 p.m., Fernando REYES, using (Target Telephone #19), called Tommie COLE. REYES stated, "I got a lot of stuff right now." COLE replied, "Okay, okay. I got you." REYES asked, "Alright, bro?" COLE replied, "Yeah." REYES stated, "Can you be ready by tomorrow?" COLE replied, "Today or tomorrow. I'mma give you a call." REYES agreed. Case agents believe REYES told COLE he had a lot of cocaine for sale and asked COLE to help him by purchasing cocaine. COLE agreed and said he would call REYES that day or the next. On July 7, 2017, at 9:35 p.m., COLE, called REYES at (Target Telephone #19). COLE stated, "I'm finna get this together and see, uh… in about 25 minutes. I'll probably…" REYES asked, "In your place?" COLE stated, "Yeah." REYES asked, "Did you want a 'truck'?" COLE replied, "No, I'm finna let you know what I want." REYES stated, "I got only two right now with me. I got more for tomorrow." COLE stated, "I'mma call you as soon as I get over there." REYES agreed. Case agents believe COLE told REYES he was getting money together and would be ready in 25 minutes. REYES asked if he should go to COLE's house and COLE said he should. REYES asked if COLE wanted a 'truck,' a code word for a certain amount of cocaine. COLE said he would let REYES know how much cocaine he wanted. REYES said he only had two kilograms of cocaine at the moment and would have more cocaine later. At 9:54 p.m., COLE, called REYES at (262) 613-1508 (Target Telephone #19). COLE asked, "What time can you bring them?" REYES asked, "Two?" COLE stated, "Yeah." REYES said, "Alright. See

you there in half hour." Case agents believe COLE asked REYES when he could deliver the cocaine. REYES asked if COLE wanted two kilograms and COLE said he did. REYES said he would be at COLE's residence in a half hour. Court-authorized positional information for ((Target Telephone #19) showed that (Target Telephone #14) was in close proximity to COLE's residence, at 10:49 p.m.,

6. On August 22, 2017, at 1:25 p.m., Tommie COLE, called Fernando REYES at (Target Telephone #23). COLE stated, "You supposed to have brought me a different picture and you never brought it to me." REYES replied, "The guy, he not really wanna [expletive] it up with the other one…because they got the same price, bro. They got the same price and the other one we have to go to the City. To the big city." COLE stated, "Oh, straight up?" REYES replied, "Yup." COLE stated, "Okay. Okay." Case agents believe COLE told REYES he never brought him a sample of a different kind of heroin that REYES had for sale. REYES stated his supplier did not want to supply that heroin, but the price was the same as the heroin from another supplier. REYES told COLE that if they wanted to purchase the heroin from the other supplier, they would have to drive to Chicago ("the big city") to pick it up. COLE and REYES agreed to talk further about the heroin transaction.